UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BRYAN W. PLUMMER,

                         Petitioner,

v.                                     Case No. 3:12-cv-485-J-34PDB

SECRETARY OF THE FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

                         Respondents.

_____

**ORDER**

**I. Status**

    Petitioner Bryan W. Plummer, an inmate of the Florida penal system, initiated this action on April 27, 2012, by filing a pro se Petition for Writ of Habeas Corpus (Petition; Doc. 1) under 28 U.S.C. § 2254 with an Appendix (P. Ex.; Doc. 2). In the Petition, Plummer challenges a 2006 state court (Bradford County, Florida) judgment of conviction for driving under the influence (DUI) manslaughter (three counts) and DUI causing serious bodily injury.

Respondents have submitted a memorandum in opposition to the Petition. See Respondents' Response to Petition for Writ of Habeas Corpus (Response; Doc. 9) with exhibits (Resp. Ex.). On May 7, 2012, the Court entered an Order to Show Cause and Notice to Petitioner (Doc. 6), admonishing Plummer regarding his obligations and giving Plummer a time frame in which to submit a reply. Plummer submitted a brief in reply. See Petitioner's Traverse/Reply to Response (Reply; Doc. 14). This case is ripe for review.

## II. Procedural History

On September 6, 2002, the State of Florida charged Plummer with DUI manslaughter (Counts I-III); DUI resulting in serious bodily injury (Count IV); vehicular homicide (Counts V-VII); and possession of not more than twenty grams of cannabis (Count VIII). Resp. Ex. A at 19-21, Information. On May 26, 2004, the Information was amended to allege an unlawful blood alcohol level in Count IV. Resp. Ex. B at 439-41. The trial court severed Count VIII. Id. at 433-35, Order Severing Count VIII and Excluding Evidence as to Presence of Marijuana. Plummer proceeded to trial in June 2004, see Resp. Exs. D-N2, Transcripts of the Jury Trial (Tr.), at the conclusion of which, on June 28, 2004, a jury found him guilty, as charged, on Counts I-IV and guilty of the lesser offense of culpable negligence for Counts V-VII. See Resp. Ex. B at 473-75, Verdict; Tr. at 1391-92. On July 1, 2004, the court sentenced Plummer to a term of imprisonment of twenty years for Count I;

sixteen years for Count II, to run consecutively to Count I; twenty years for Count III, to run concurrently to Count I; and five years for Count IV, to run concurrently to Count II. Resp. Ex. B at 479–89, Judgment. The trial court abated Counts V–VII. After years of litigation relating to Plummer's sentences, the trial court resentenced Plummer on October 13, 2006, see PD-1 at 18, and modified the sentences on December 12, 2006, see id. at 19, and March 16, 2007, see id. at 20, as follows: a term of imprisonment of fifteen years for Count I; fifteen years for Count II, to run concurrently to Count I; five years for Count III, to run consecutively to Counts I and II; and five years for Count IV, to run consecutively to Count III. See Resp. Ex. Y at 1–5, Order Granting Motion to Correct Illegal Sentence and Directing the Clerk of Court to Amend Sentence, filed March 16, 2007.

On appeal, Plummer, with the benefit of counsel, filed an initial brief in September 2005, arguing that the trial court erred when it: (a) sustained an objection to the introduction of a material safety data sheet (MSDS) which was relevant to a disputed issue concerning the amount of methanol and ethanol in a can of denatured alcohol that Plummer may have accidentally ingested and thereby increased his blood alcohol level, and (b) did not allow Plummer a continuance to authenticate the MSDS (ground one); denied Plummer's motion to exclude the blood test results (ground two); denied his motion to dismiss the charges of DUI manslaughter

because Florida Statutes section 316.193 does not define impairment (ground three); and admitted the blood test results when the State had failed to establish the reliability of the tests (ground four). Resp. Ex. S. Additionally, Plummer argued that the appellate court should remand the case to the trial court for a hearing on the motion to correct sentencing error (ground five). Id. The State filed an answer brief, see Resp. Ex. T, and Plummer filed a reply brief, see Resp. Ex. U. On July 3, 2006, the appellate court reversed the trial court's denial of Plummer's Rule 3.800(b) motion, remanded the case for resentencing, and affirmed the trial court's decision on the remaining issues. See Plummer v. State, 935 So.2d 35 (Fla. 1st DCA 2006) (per curiam); Resp. Ex. V. The court denied the State's motion for rehearing on August 4, 2006, see Resp. Ex. W, and the mandate issued on August 22, 2006, see Resp. Ex. X. Plummer did not seek review in the United States Supreme Court.

On April 18, 2007, Plummer, with the benefit of counsel, filed a motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850. In his request for post conviction relief, Plummer asserted that counsel was ineffective because he failed to: properly investigate and obtain certified MSDS evidence that was extremely pertinent to Plummer's defense - that Plummer was covered in paint and denatured alcohol, which resulted in an artificial elevation of his blood alcohol level due to ingestion,

4

inhalation and absorption (ground A); properly object to State's exhibit 28, which was not part of discovery, and request a continuance and/or a Richardson[1] hearing to examine the new business record exception, the exhibit's authenticity and the prejudice to the defense (ground B); argue that State's exhibit 28 and the letter of certification were testimonial evidence in nature in violation of the Sixth Amendment's confrontation clause (ground C); request an involuntary intoxication instruction (ground D); argue for suppression of the blood test results on the ground that the results were illegally obtained by the State (ground E); advise Plummer of his right to testify and the prosecution's ability to use his prior criminal record to impeach his credibility at trial (ground F); advise Plummer of the strict liability standard of Florida's DUI laws in that Florida Statutes section 316.193 criminalizes conduct for "as little as 1% contribution" to injury or death if it is proven that the accused operated a vehicle while impaired or with a .08 or higher blood alcohol level (ground G); investigate the State's presentation of misleading evidence to the court and jury, and file a motion for a new trial to inform the court or preserve the record for appeal (ground I); argue that denying Plummer the ability to present evidence at trial was a violation of state and federal law and contrary to Chambers v. Mississippi, 410 U.S. 284 (1973), and the Due Process Clause

---

[1] Richardson v. State, 246 So.2d 771 (Fla. 1971).

(ground J); and depose and subpoena Dr. Pete Gianis before trial
(ground K). Resp. Ex. CC at 1-33. Additionally, Plummer asserted
that the State violated Brady[2] when it failed to "fully disclose
the entire spectrum of compositions for denatured alcohol" to the
defense (ground H), and the cumulative effect of counsel's
ineffectiveness deprived Plummer of a fair trial (ground L). Id. On
October 3, 2007, the court denied Plummer's motion as to grounds D,
H, J and L, and scheduled an evidentiary hearing as to the
remaining grounds. Id. at 34-46. In an amendment, Plummer asserted
counsel was ineffective because he: failed to investigate the paint
and chemicals which covered Plummer and were pivotal to the defense
(ground M), and misinformed Plummer that a full scale traffic crash
analysis would be, and had been, conducted by a defense expert and
failed to object to the presentation of unscaled and misleading
crash analysis diagrams during trial (ground N). Id. at 195-205.
The court granted Plummer's request to supplement his post
conviction motion and present evidence on his new claims. Resp. Ex.
DD at 215-31. After a three-day evidentiary hearing on June 29-30,
2009, and August 21, 2009, see Resp. Exs. DD at 232-312; EE; FF at
569-715, Transcripts of the Evidentiary Hearing (EH Tr.), and the
filing of post-hearing memoranda, see Resp. Ex. GG at 759-98, 800-
02, 807-18, the court denied Plummer's post conviction motion as to
grounds A, B, C, E, F, G, I, K, M and N. Id. at 919-27. On July 7,

---

[2] Brady v. Maryland, 373 U.S. 83 (1963).

6

2010, the court denied Plummer's motion for rehearing. Resp. Ex. HH. On appeal, Plummer filed an initial brief, <u>see</u> Resp. Ex. II, and the State notified the court that it did not intend to file an answer brief, <u>see</u> Resp. Ex. JJ. On October 31, 2011, the appellate court affirmed the trial court's denial per curiam, <u>see</u> <u>Plummer v. State</u>, 73 So.3d 764 (Fla. 1st DCA 2011); Resp. Ex. KK, and the mandate issued on November 16, 2011, <u>See</u> Resp. Ex. LL.

### III. One-Year Limitations Period

The Petition appears to be timely filed within the one-year limitations period. <u>See</u> 28 U.S.C. § 2244(d); Response at 4 n.4.

### IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id.</u> The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

7

## V. Standard of Review

The Court will analyze Plummer's claims under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Section 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Thus, 28 U.S.C. § 2254(d) "bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter, 131 S.Ct. 770, 784 (2011). As the United States Supreme Court stated, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S.Ct. 10, 16 (2013). This standard of review is described as follows:

> Under AEDPA, when the state court has adjudicated the petitioner's claim on the merits, a federal court may not grant habeas

relief unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2). "Under § 2254(d)(1)'s 'contrary to' clause, we grant relief only 'if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.'" Jones v. GDCP Warden, 753 F.3d 1171, 1182 (11th Cir. 2014) (quoting Williams v. Taylor, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). "Under § 2254(d)(1)'s 'unreasonable application' clause, we grant relief only 'if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Id. (quoting Williams, 529 U.S. at 413, 120 S.Ct. 1495).

For § 2254(d), clearly established federal law includes only the holdings of the Supreme Court – not Supreme Court dicta, nor the opinions of this Court. White v. Woodall,- U.S. -, 134 S.Ct. 1697, 1702, 188 L.Ed.2d 698 (2014). To clear the § 2254(d) hurdle, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 131 S.Ct. 770, 786-87, 178 L.Ed.2d 624 (2011). "[A]n 'unreasonable application of' [Supreme Court] holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." Woodall, 134 S.Ct. at 1702 (quoting Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)). A state court need not cite or even be aware of

> Supreme Court cases "so long as neither the reasoning nor the result of the state-court decision contradicts them." <u>Early v. Packer</u>, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002); <u>accord</u> <u>Richter</u>, 131 S.Ct. at 784.
>
> "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." <u>Renico v. Lett</u>, 559 U.S. 766, 773, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010) (citations and internal quotation marks omitted). And when a claim implicates both AEDPA and <u>Strickland</u>, our review is doubly deferential. <u>Richter</u>, 131 S.Ct. at 788 ("The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." (citations and internal quotation marks omitted)). [A petitioner] must establish that no fairminded jurist would have reached the Florida court's conclusion. <u>See</u> <u>Richter</u>, 131 S.Ct. at 786-87; <u>Holsey v. Warden, Ga. Diagnostic Prison</u>, 694 F.3d 1230, 1257-58 (11th Cir. 2012). "If this standard is difficult to meet, that is because it was meant to be." <u>Richter</u>, 131 S.Ct. at 786....

<u>Taylor v. Sec'y, Fla. Dep't of Corr.</u>, 760 F.3d 1284, 1293-94 (11th Cir. 2014), <u>cert</u>. <u>denied</u>, 135 S.Ct. 2323 (2015); <u>see also</u> <u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1230 (11th Cir. 2014), <u>cert</u>. <u>denied</u>, 135 S.Ct. 2126 (2015).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. <u>Hittson</u>, 759 F.3d at 1232 ("[T]here is

no AEDPA requirement that a state court explain its reasons for rejecting a claim[.]"); <u>Richter</u>, 131 S.Ct. at 785 (holding that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits); <u>Wright v. Sec'y for the Dep't of Corr.</u>, 278 F.3d 1245, 1255 (11th Cir. 2002). Thus, to the extent that Plummer's claims were adjudicated on the merits in the state courts, they must be evaluated under § 2254(d).

## VI. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u>, at 689, 104 S.Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u>, at 687, 104 S.Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S.Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S.Ct. 2052.

Richter, 131 S.Ct. at 787-88. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010)(citation omitted).

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S.Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's

12

> deferential standard," then a federal court
> may not disturb a state-court decision denying
> the claim. <u>Richter</u>, - U.S. at -, 131 S.Ct. at
> 788.

<u>Hittson</u>, 759 F.3d at 1248; <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123

(2009); <u>see also Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th

Cir. 2004) ("In addition to the deference to counsel's performance

mandated by <u>Strickland</u>, the AEDPA adds another layer of

deference--this one to a state court's decision--when we are

considering whether to grant federal habeas relief from a state

court's decision."). "Surmounting <u>Strickland</u>'s high bar is never an

easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VII. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Plummer asserts that counsel (Stephen J.

Weinbaum) was ineffective because he failed to properly

investigate, obtain and certify "a 95/5 MSDS"[3] that was pertinent

---

[3] Plummer states that "a 95/5 MSDS" refers to a Material
Safety Data Sheet with "95 percent ethanol, 1-4 percent methanol."
Petition at 8 n.3. Plummer asserts that the composition of the
denatured alcohol "was not lethal as the state represented to the
jury." Petition at 16 (emphasis deleted). Respondents object, and
this Court agrees, that Plummer's "95/5" formula is inaccurate. The
January 20, 1995 MSDS, <u>see</u> P. Ex. at 25, showed denatured alcohol
as 95-100% of the mixture, with ethanol as 85-90% of that 95-100%
mixture. Therefore, the lowest proportion of ethanol would be 81%,
and the highest proportion of ethanol would be 90%. Additionally,
the September 13, 2000 MSDS, <u>see</u> P. Ex. at 26, showed denatured
alcohol as 45-50% of the mixture, with ethanol as 85-90% of that
45-50% mixture. Therefore, the lowest proportion of ethanol would
be 38%, and the highest proportion of ethanol would be 45%. <u>See</u>
Response at 6-7. Plummer argues that the State relied on a 2004
MSDS at trial when the accident happened in 2002, <u>see</u> Petition at

to Plummer's defense at trial.[4] Petition at 8. Plummer raised the
ineffectiveness claim in his Rule 3.850 motion in state court, and
the circuit court held an evidentiary hearing concerning the
issue.[5] The court ultimately denied the post conviction motion with
respect to this claim, stating in pertinent part:

> As to ground (A), Defendant alleges that
> trial counsel was ineffective for failing to
> properly investigate, obtain, and certify a
> 95/5 Material Safety Data Sheet (hereafter
> "MSDS"). At trial, Defendant sought to
> convince the jury that he had ingested
> denatured alcohol as a result of the accident
> in this case; and, that this denatured
> alcohol, coupled with the three beers that he
> drank prior to the accident, caused his blood
> alcohol level to spike above the legal
> limit.[6] See Trial Transcript at 129 (lines 4-
> 16), 1183 (lines 2-19), 1215 (lines 2-4), 1346
> (lines 1-9), 1350 (lines 1-21), 1351 (lines
> 11-18). Despite Defendant's argument, no

_____

17; Plummer relies on a pre-2000 MSDS and a 2003 MSDS, see id. at
16; see also Response at 6-7, to show that he may have ingested
denatured alcohol with a 95/5 composition that would not have been
lethal.

[4] Plummer's defense at trial was that his blood alcohol level
was elevated from .06 (caused by his consumption of three beers) to
the reported .105 that the State presented at trial, as a result of
the denatured alcohol, specifically with a high ethanol content,
that was absorbed through Plummer's skin and inhaled through his
lungs at the time of the car collision.

[5] Bryan Plummer was represented by counsel at the evidentiary
hearing.

[6] The fatal head-on collision, resulting in three deaths and
serious bodily injury to a thirteen-year-old boy, occurred on July
26, 2002, at approximately 9:15 p.m. See Tr. at 507-08, 568. At
approximately 11:20 that night, Plummer's blood alcohol level was
.16 (hospital test), and two hours later, it was .105 (Florida
Department of Law Enforcement test). See id. at 397, 423, 730.

evidence has ever been introduced which shows
that Defendant actually ingested denatured
alcohol. In fact, the evidence presented at
both his trial and his evidentiary hearing
supports the opposite conclusion. First, had
Defendant ingested denatured alcohol into his
blood system, he would have had traces of
methanol as well as traces of ethanol in his
blood, due to the fact that denatured alcohol
consists of both methanol and ethanol. There
was no trace of methanol found in Defendant's
blood. Id. at 421 (lines 11-25)- 422 (lines 1-
20), 842 (lines 18-25) [sic] -5), 1070 (lines
2-9), 1084 (lines 15-25)- 1085 (lines 1-22).
Second, the flattened can of denatured alcohol
that was found in Defendant's truck after the
accident was located in the bed of the truck
not the cab of the truck where Defendant was
located. See Trial Transcript at 596 (line 25)
- 597 (lines 1-6). The can was "underneath a
few other pieces of tools and rubble." Id. at
648 (lines 5-14). As the trial judge noted at
the time, Defendant's claim that he ingested
denatured alcohol from this can during the
accident is nothing more than mere conjecture
and speculation. Id. at 825 (lines 21-25) -
828 (lines 1-18), 836 (lines 10-14), 839
(lines 2-22), 1200 (lines 3-5), 1250 (lines
10-11). Third, there is no evidence of when
Defendant purchased the can of denatured
alcohol which was found in the truck.[7]
Fourth, even if Defendant could have
successfully introduced a pre-2000 95/5 MSDS
at trial, the State could have still
introduced a post-2000 50/50 MSDS. In
addition, the State could have pointed out to
the jury that Defendant used denatured alcohol
in his business, thus making it more likely
than not that the denatured alcohol which was
in the can was produced after 2000. Id. at
1210 (lines 16-20). The State could also have

---

[7] Plummer wanted to rely on a 1995 MSDS for the denatured
alcohol that he claimed to have ingested. Notably, the fatal crash
occurred in 2002, and the trial was in 2004. The post-2000 MSDS
chemical compositions were not favorable to Plummer since there
were higher methanol percentages.

noted that: (1) there is no evidence that the can contained denatured alcohol at the time of the accident (even if the can had been produced prior to 2000); and, (2) there is no evidence that the can was flattened <u>as a result of the accident</u>. Because Defendant is unable to show that he <u>actually</u> ingested denatured alcohol, he fails to show a reasonable probability that but for counsel's failure to obtain the 95/5 MSDS[,] the outcome of the trial would have been different. This claim is without merit.

Resp. Ex. GG at 820-21. On Plummer's appeal, the appellate court affirmed the trial court's denial per curiam. <u>See</u> <u>Plummer</u>, 73 So.3d 764; Resp. Ex. KK.

Assuming the appellate court affirmed the denial on the merits, there are qualifying state court decisions. Thus, the Court considers this claim in accordance with the deferential standard for federal court review of state court adjudications. After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Plummer is not entitled to relief on the basis of this claim.

Moreover, even assuming the state courts' adjudications of this claim are not entitled to deference, Plummer's ineffectiveness claim is still without merit. The record fully supports the trial court's conclusion. In evaluating the performance prong of the

<u>Strickland</u> ineffectiveness inquiry, there is a strong presumption in favor of competence. <u>See</u> <u>Anderson v. Sec'y, Fla. Dep't of Corr.</u>, 752 F.3d 881, 904 (11th Cir. 2014), <u>cert</u>. <u>denied</u>, 135 S.Ct. 1483 (2015). The presumption that counsel's performance was reasonable is even stronger when, as in this case, defense counsel Mr. Weinbaum is an experienced criminal defense attorney.[8] The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." <u>Strickland</u>, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" <u>Rompilla v. Beard</u>, 545 U.S. 374, 381 (2005). Thus, Plummer must establish that no competent attorney would have taken the action that counsel, here, chose.

Moreover, the test for ineffectiveness is neither whether counsel could have done more nor whether the best criminal defense attorneys might have done more; in retrospect, one may always identify shortcomings. <u>Waters v. Thomas</u>, 46 F.3d 1506, 1514 (11th

---

[8] "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger." <u>Chandler v. United States</u>, 218 F.3d 1305, 1316 (11th Cir. 2000); <u>see</u> <u>Williams v. Head</u>, 185 F.3d 1223, 1229 (11th Cir. 1999) (noting that "[i]t matters to our analysis" whether the attorney is an experienced criminal defense attorney). Stephen J. Weinbaum was admitted to the Florida Bar in 1976. <u>See</u> http://www.floridabar.org. Thus, at the time of Plummer's trial in June 2004, Weinbaum had been practicing law for over twenty-five years and had extensive experience in criminal defense law. <u>See</u> EH Tr. at 235-41.

Cir. 1995) (stating that "perfection is not the standard of effective assistance") (quotations omitted). Instead, the test is whether what counsel did was within the wide range of reasonable professional assistance. Ward v. Hall, 592 F.3d at 1164 (quotations and citation omitted); Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted).

On this record, Plummer has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. Even assuming arguendo deficient performance by defense counsel, Plummer has not shown prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had obtained a certified "95/5 MSDS" to show the jury that Plummer ingested denatured alcohol with a 95/5 chemical composition formula (with ethanol and methanol components) as opposed to the State's 50/50 MSDS which showed a higher methanol content. Notably, the jury heard the testimony of Plummer and two defense expert witnesses in toxicology,[9] and chose to believe that Plummer's blood alcohol level was above the legal limit and that he caused the

---

[9] See Tr. at 794-809 (Dr. Masten's qualifications), 1038-42 (Dr. Bateh's qualifications).

fatal accident that night. Therefore, Plummer's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Plummer is not entitled to federal habeas relief on ground one.

## B. Ground Two

As ground two, Plummer asserts that counsel was ineffective because he failed to argue that the State's 50/50 MSDS[10] and letter of certification accompanying the exhibit were testimonial in nature, thereby violating his right of confrontation under the Sixth Amendment to the United States Constitution. Petition at 15. Plummer raised the ineffectiveness claim in his Rule 3.850 motion in state court, and the circuit court held an evidentiary hearing concerning the issue. The court ultimately denied the post conviction motion with respect to this claim, stating in pertinent part:

> As to ground (C), Defendant alleges that trial counsel was ineffective for failing to argue that the State's 50/50 MSDS and the letter of certification accompanying the exhibit were testimonial in nature, thereby violating Defendant's right of confrontation under the Sixth Amendment to the United States Constitution. The letter of certification at issue was clearly testimonial. The State concedes this point. However, even though it was testimonial, the contents of the letter

---

[10] The State's 50/50 MSDS, see P. Ex. at 8-13, 49, was a routinely-produced business record, see Tr. at 1075-82; 1082-84 (Dr. Bateh's testimony relating to the March 26, 2004 MSDS).

did not prejudice Defendant.[11] The accident
in this case occurred in 2002. The letter
indicates that the mix in the denatured
alcohol did not change to 50/50 until 2000.
See State's Exhibit 2. In addition, even if
the State could not have introduced the
letter, it could still have introduced the
post-2000 MSDS's, showing the exact same
information contained in the letter. The
result would have been the same. Furthermore,
. . . , even if the jury had seen all the
MSDS's from 1995 through 2002, it would still
have needed to determine: (1) <u>when</u> the
denatured alcohol at issue was manufactured;
(2) if the flattened can found in the back of
Defendant's truck contained denatured alcohol
<u>at the time of the accident</u>; and, (3) if
Defendant actually ingested denatured alcohol
during the accident. There was no evidence
presented at trial which would have supported
any of these determinations. All the jury
would have had to base its findings on was
conjecture and speculation. Defendant fails to
show a reasonable probability that the outcome
of the trial would have been different but for
counsel's failure to properly object. This
claim is without merit.

---

[11] <u>See</u> P. Ex. at 4, Letter to the Office of the State Attorney
from Michael S. Cooley, Associate General Counsel for W.M. Barr &
Company, Inc., dated June 25, 2004.

Resp. Ex. GG at 822; see id. at 821-22 (relating to ground B).[12]

On Plummer's appeal, the appellate court affirmed the trial court's

denial per curiam. See Plummer, 73 So.3d 764.

---

[12] As to ground B in Plummer's state post conviction motion,
the trial court stated in pertinent part:

> Defendant alleges that trial counsel was
> ineffective for failing to properly object to
> the State's 50/50 MSDS. The record reflects
> that counsel did object to the introduction of
> the State's 50/50 MSDS during trial. See Trial
> Transcript at 1075 (lines 16-25) - 1082 (lines
> 1-9). Defendant argues, however, that counsel
> did not object with a sufficient basis.
> Regardless, the trial judge would not have
> granted either a continuance or a Richardson
> hearing on the matter of the late discovery of
> the 50/50 MSDS. First, the State did not
> obtain the MSDS until after the time of trial
> (and it was obtained solely in response to
> Defendant's theory that the ethanol/methanol
> mix of the denatured alcohol was 95/5). Thus,
> the State did not fail to timely disclose the
> MSDS or withhold it from the defense in any
> way. Second, the ethanol/methanol mix argument
> was a significant part of Defendant's defense.
> He clearly had knowledge of and access to the
> same MSDS information while preparing his
> defense of a 95/5 mix (a defense that was
> presented to the jury even before the State
> produced the 50/50 MSDS). Even if the trial
> court had allowed the defense a continuance to
> obtain a 95/5 MSDS, that would not have
> prevented the State from introducing the 50/50
> MSDS. Defendant fails to show that but for
> counsel's failure to properly object, ask for
> a continuance, or ask for a Richardson hearing
> the outcome of the trial would have been
> different. This claim is without merit.

Resp. Ex. GG at 821-22.

Given the record in the instant action, the appellate court may have affirmed the denial of Plummer's motion for post conviction relief on the merits. If the appellate court addressed the merits, Plummer would not be entitled to relief because the state courts' adjudications of this claim are entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were the state court adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Plummer is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Plummer's claim is still without merit. The trial court's conclusion is fully supported by the record. Based on the record in the instant case, counsel's performance was within the wide range of professionally competent assistance. Even assuming arguendo deficient performance by defense counsel, Plummer has not shown prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had argued that the State's 50/50 MSDS and Cooley's letter

of certification were testimonial in nature. Thus, Plummer's ineffectiveness claim fails because he has shown neither deficient performance nor resulting prejudice. He is not entitled to federal habeas relief as to ground two.

## C. Ground Three

As ground three, Plummer asserts that counsel was ineffective because he failed to obtain an independent accident reconstruction analysis. Petition at 20. Plummer raised the ineffectiveness claim in his Rule 3.850 motion in state court, and the circuit court held an evidentiary hearing relating to the issue. The court ultimately denied the post conviction motion with respect to this claim, stating in pertinent part:

> As to ground (N), Defendant alleges that trial counsel was ineffective for failing to ensure that an independent accident reconstruction analysis was conducted in Defendant's case. In essence, this claim relates to what was the crux of Defendant's defense at trial: Defendant did not cause or contribute to the cause of the accident. In support of his claim, Defendant presents an amped-up version of his trial defense. However, the new analysis does not undermine the raw data collected by Trooper Stahlnecker. See Evidentiary Hearing (June 29, 2009) Transcript at 45 (lines 24-25) - 46 (lines 1-7).[13] And, it is based solely on the premise that Defendant was <u>alert and attentive</u> when the accident occurred. Id. at 148 (lines 1-25) - 149 (lines 1-8).[14] That premise is undoubtedly flawed because: (1) it ignores the

---

13 <u>See</u> EH Tr. at 358.

14 <u>See</u> EH Tr. at 460-61.

observations of the other witnesses to the
accident, particularly as to the evidence that
Defendant was driving with his headlights off
when the accident occurred, see Trial
Transcript at 167 (lines 6-25) - 169 (lines 1-
18), 228 (lines 19-25) - 229 (lines 1-11), 230
(lines 9-25) - 231 (lines 1-22), 234 (lines
23-25) - 235 (lines 1-5); (2) it ignores the
fact that Defendant had unquestionably
ingested three beers shortly before the
accident occurred;[15] (3) it ignores the fact
that a still-cold beer was found near the door
of Defendant's truck after the accident, id.
at 512 (lines 12-20), 520 (lines 19-25) - 521
(lines 1-6); and, (4) it ignores the fact that
an empty beer bottle of the same type of beer
was found next to the driver's seat in the cab
of Defendant's truck, id. at 522 (lines 9-22).
Even if the jury had heard Defendant's new and
improved accident reconstruction evidence at
the time of his trial, the fact remains that
the jury would also have considered the
evidence indicating that Defendant was
impaired at the time of [the] accident. It is
highly unlikely that the jury would have
disregarded the evidence of Defendant's
impairment when considering the accident
reconstruction testimony. Thus, the outcome
would still have been the same. Defendant
fails to show either error by counsel or
prejudice. Accordingly, this claim is without
merit.

Resp. Ex. GG at 826. On Plummer's appeal, the appellate court

affirmed the trial court's denial per curiam.

Given the record in the instant action, the appellate court

may have affirmed the denial of Plummer's motion for post

conviction relief on the merits. If the appellate court addressed

the merits, Plummer would not be entitled to relief because the

---

[15] See Tr. at 1215, 1219, 1220 (Plummer's testimony).

state courts' adjudications of this claim are entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were the state court adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Plummer is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Plummer's claim is still without merit. The trial court's conclusion is fully supported by the record. Based on the record in the instant case, counsel's performance was within the wide range of professionally competent assistance. Even assuming arguendo deficient performance by defense counsel for failing to obtain an independent accident reconstruction analysis, Plummer has not shown prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if the jury had heard his independent accident reconstruction evidence. Thus, Plummer's ineffectiveness claim fails because he has shown neither deficient performance nor resulting prejudice.

## D. Ground Four

As ground four, Plummer asserts that the State violated <u>Brady</u> when it failed to fully disclose to the defense the full range (1995-2004) of compositions for denatured alcohol in the MSDS documents.[16] <u>See</u> Petition at 24-27. Plummer raised this claim in his Rule 3.850 motion in state court, and the circuit court summarily denied (without an evidentiary hearing on the issue) the post conviction motion with respect to this claim, stating in pertinent part:

> As ground (H), Defendant alleges that the State failed to disclose evidence favorable to Defendant in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). In order to make a sufficient <u>Brady</u> claim, a movant must prove the following: (1) that the State possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant did not possess the evidence nor could he have obtained it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable possibility exists that the outcome of the proceeding would have been different. <u>Robinson v. State</u>, 707 So.2d 688, 693 (Fla. 1998) (citing <u>Brady v. Maryland</u>, 373 U.S. 83 (1963)). Here, the evidence includes additional MSDS sheets. Defendant alleges that these sheets contain contradictory information which would impeach the reliability of State's Exhibit 28. Defendant argues that the State knew of this evidence, failed to provide

---

[16] Plummer argues that the State was aware that the product was 95 percent ethanol before September 2000 and on July 8, 2003, <u>see</u> Petition at 26; Response at 7, but did not produce this information to the defense, instead permitting the jury to believe that the product was lethal from 2000 through 2004, <u>see</u> Petition at 26.

notice to the defense, and intentionally suppressed it by objecting to its admission at trial. However, Defendant fails to show that he could not obtain the MSDS himself with reasonable diligence. In fact, in his first allegation, Defendant alleges that counsel could have discovered the MSDS sheets prior to trial if counsel had made a reasonable investigation. <u>See</u> Motion at 5-7.[17] Further, Defendant states in his motion that he was able to obtain additional MSDS sheets during trial. <u>See</u> Motion at 6.[18] However, Defendant alleges that, although he has obtained the evidence himself both during trial and afterward, W.M. Barr refuses to certify the additional MSDS. W.M. Barr's lack of certification is not suppression by the State. Given that the MSDS sheets were accessible to Defendant prior to trial upon a reasonable investigation, the allegation that the State committed a <u>Brady</u> violation is without merit.

Resp. Ex. CC at 41-42. On Plummer's appeal, the appellate court affirmed the trial court's denial per curiam.

Given the record, the appellate court may have affirmed the denial of Plummer's motion for post conviction relief on the merits. If the appellate court addressed the merits, Plummer would not be entitled to relief because the state courts' adjudications of this claim are entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable

---

[17] <u>See</u> Resp. Ex. CC at 5-7.

[18] <u>See</u> Resp. Ex. CC at 6 ("While on the library computer, Defendant Plummer located three different MSDS sheets for denatured alcohol from the National Poison Control Center.").

application of clearly established federal law.[19] Nor were the state court adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Plummer is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Plummer's claim is still without merit. The trial court's conclusion is fully supported by the record. See United States v. Gayle, No. 14-10578, 2015 WL 1881120, *7 (11th Cir. Apr. 27, 2015) (stating that, in order to establish constitutional error in violation of Brady,[20] a defendant must show that "he did not possess the evidence, nor could he obtain it himself with reasonable diligence"); State v. Woodel, 145 So.3d 782, 804 (Fla.

___

[19] Plummer argues that the post conviction court used "the wrong test," and that the proper three-part test is set forth in Strickler v. Greene, 527 U.S. 263 (1999), and "does not require a showing that petitioner could not have obtained the evidence through due diligence." Petition at 25.

[20] To establish a Brady violation, the defendant must demonstrate (1) that favorable evidence - either exculpatory or impeaching, (2) was willfully or inadvertently suppressed by the State, and (3) the defendant was prejudiced. See Strickler v. Greene, 527 U.S. 263, 281-82 (1999); United States v. Brester, 786 F.3d 1335, 1339 (11th Cir. 2015); United States v. Hernandez, 313 F. App'x 253, 254 (11th Cir. 2009) ("The government is not required to furnish a defendant with exculpatory evidence that is fully available through the exercise of due diligence.") (citation omitted).

2014) (stating "we have previously explained that the second prong of the analysis is not satisfied 'where the information is equally accessible to the defense and the prosecution, or where the defense either had the information or could have obtained it through the exercise of reasonable diligence'") (citations omitted), <u>cert</u>. <u>denied</u>, 135 S.Ct. 1735 (2015); <u>Provenzano v. State</u>, 616 So.2d 428, 430 (Fla. 1993). Moreover, "'[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial,' does not establish prejudice." <u>United States v. Brester</u>, 786 F.3d 1335, 1339 (11th Cir. 2015) (citing <u>United States v. Agurs</u>, 427 U.S. 97, 109-10 (1976)). In the instant action, the State's failure to disclose MSDS documents for 1995 through 2004 to the defense was not a <u>Brady</u> violation. Additionally, the post conviction court used the proper legal standard when it denied Plummer's <u>Brady</u> claim. Plummer is not entitled to federal habeas relief as to ground four.

## <u>VIII. Certificate of Appealability</u><br><u>Pursuant to 28 U.S.C. § 2253(c)(1)</u>

If Plummer seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Plummer "must demonstrate that reasonable jurists would find the district court's assessment of the

constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.   The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.   If Plummer appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

4.   The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 17th day of August, 2015.


**MARCIA MORALES HOWARD**
United States District Judge


sc 7/10
c:
Bryan W. Plummer
Ass't Attorney General (McCoy)